Joseph A. Greenawalt, John H. Brice, Elizabeth Brice and Jacob Greenawalt *v.* Joseph M. Dixon, Appellant.

*Equity—Fraud—Evidence—Findings of fact.*

On a bill in equity for the cancelation of an alleged fraudulent mortgage, the Supreme Court will not reverse a decree of the court of common pleas based on findings of fact establishing the fraud, where there is sufficient evidence to sustain the findings.

Land in which G. had a life estate, with remainder to his children, was sold under judgment against G., and bought by the judgment creditor. D., who had been a friend of the family of G., and agent in renting property, got an agreement from the purchaser that, if he could sell his interest for $2,363, he should have $500 as his commission. D., without disclosing this, but pretending to be acting only as a friend of G., represented to G.'s children that he could save the property to their family by buying it of the creditor for $2,363, the least he would take, and that, if they would secure him, he would advance the money, and take the title ; he to have control of the property, and collect the rents, till fully paid, including a commission on rents received ; he to convey to G., if payment was made before his death ; otherwise to the children, if they paid the balance due. *Held,* that the children having given the security, and D., having paid the $2,363, less the $500 commission, was guilty of a fraud, and that, on payment by the children on the basis of the amount actually paid by D., they could have a surrender of the securities, and a conveyance of the properties.

Argued Oct. 31, 1899. Appeal, No. 104, Oct. T., 1899, by defendant, from decree of C. P. No. 2, Allegheny Co., Oct. T.,

1899, No. 714, on bill in equity.   Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.   Affirmed.

Bill in equity for the cancelation of a bond and mortgage alleged to have been secured by fraud.

WHITE, P. J., found the facts to be as follows :

1. Margaret E. Greenawalt, wife of Dr. Jacob Greenawalt, died September 1, 1894, and by her will gave to her husband a conditional life estate in certain houses and lots in the fifth ward of the city of Pittsburg, and after the termination of his life estate, the properties to go in fee to his son Joseph A. Greenawalt and her daughter Elizabeth Brice, the plaintiffs.

2. On September 4, 1894, the South Pittsburg Planing Mill Company obtained judgment against the said Dr. J. Greenawalt for $2,469.50.   On that judgment execution was issued, the life estate of Dr. J. Greenawalt in the houses and lots was levied upon and sold at sheriff's sale, July 5, 1895, when the planing mill company became the purchaser for $3,600, the amount of costs and taxes.

3. Joseph M. Dixon, the defendant, had been the friend of the family, and the agent in renting the properties and collecting the rents.   He represented to the plaintiffs, the children of Dr. J. Greenawalt, that he could save the property to their family by his buying the title of the planing mill company and advancing the money, if they would secure him by a mortgage of their interests in the houses and lots.   He represented that it would take $2,363, for that was the lowest sum the planing mill company would take.   In order to protect him for the advance, he must have a mortgage from them of $2,000.   An article of agreement was drawn up and signed by the plaintiffs and defendant, for that purpose, dated July 26, 1895.   It provided that Dixon was to advance, in the nature of a loan, $2,363, to buy the title and judgment of the planing mill company, the plaintiffs to give their bond and mortgage for the sum of $2,000 as security on account of said loan; that Dixon was to have control of the houses and lots, and collect the rents, until he was paid in full, including interest, and four per cent commission on the rents received; that if paid before the death of Dr. J. Greenawalt, the title of his life estate to be made over

to him, and if he died before the loan was paid, he would convey to plaintiffs, if they paid the balance due him.

4. In pursuance of that agreement the planing mill company had the sheriff make the deed to Dixon, July 29, 1895, and assigned their judgment to him. The plaintiffs executed and delivered to him their bond and mortgage for the $2,000. The defendant had an arrangement with the planing mill company that if he could sell their interest for $2,363 he was to have $500 as his commission. He gave his check on the bank for $2,363, but immediately got back the $500. He never told the plaintiffs, or gave them any intimation that he was to receive, or had received, any commission from the planing mill company, but represented that he was making the arangement and advancing the money solely as a friendly act for the benefit of Dr. J. Greenawalt. They did not learn the facts until long after the mortgage was given.

5. Procuring the bond and mortgage of the plaintiffs for $2,000, on the representations above stated, was a fraud upon the plaintiffs. They are not liable for more than the actual money advanced, nor can he hold the properties after that money has been paid. He is bound then to surrender their bond, to hand over the property, and satisfy the mortgage and the judgment assigned to him.

6. At the time the agreement was signed defendant had in his hands $105, rents collected and due Dr. J. Greenawalt, less commission at four per cent, leaving $100.80. That must be deducted from the $1,863, leaving $1,762.20 to bear interest.

7. The defendant has made a statement of his accounts to September 5, 1899, showing in his hands $843.43. That should be credited on the $1,762.20, leaving a balance still due on the mortgage of $913.77   If any rents have been received or expenses paid since April 5, 1899, the account should be corrected accordingly.

The court entered the following decree:

And now, to wit: April 25, 1899, this cause came on to be heard on bill, answer, replication and testimony in court, where upon consideration thereof by the court, it is ordered, adjudged and decreed that there is yet due, April 4, 1899, and owing by the plaintiffs to defendant the sum of $913.77, upon said mortgage and bond given by plaintiffs to defendant under the

article of agreement as set forth in said proceedings, and further that upon the payment of said sum of $913.77 by plaintiffs to defendant less any net amount from rents collected since the preparation and filing of said account, the said defendant, Joseph M. Dixon, shall surrender the bond, satisfy the mortgage and judgment mentioned in the plaintiff's bill, and surrender the title and possession of the property to the plaintiffs, otherwise he is to retain possession until fully paid, and that the defendant shall pay all costs of this proceeding.

*Error assigned* was the decree of the court.

*J. A. Langfitt*, for appellant.—If we believe the statement of the defendant, he made no false, malicious or fraudulent representations at any time to the complainants or any of them as to price, commission, mortgage or otherwise. He never pretended and never claimed that he was not to be paid for his services by the South Pittsburg Planing Mill Company. They were the owners of the present interest in this property; he was representing them as their agent. That was his regular and only business—a real estate agent. It was his means of livelihood. It was not material to these complainants how the purchase money for this property was distributed. Nor is there any question of trust or distrust in this case. During the lifetime of decedent the defendant was employed to and did collect the rents for said property. He was a rent collector for them and nothing more. At her death his employment ended. Even if defendant had been employed by decedent's heirs his employment to collect the rents could only have continued until the property was sold by the sheriff and bought by the South Pittsburg Planing Company on July 15, 1895. The defendant was employed by the purchasers of the present interest in this property. He was given a minimum selling price of $2,363 by them, and if he effected a sale of said interest for said price, they agreed to pay him, as compensation for his services, the sum of $500. Defendant was not acting for complainants. He did not expect any pay from complainants, none was offered, asked, promised or received. He went to the complainants as the most likely prospective buyers of the interest in the property in which they had the remainder. He

says in his testimony that he made a plain offer to the complainants. They considered that offer and accepted it. Defendant, then, because complainants could not raise the necessary money to make the purchase, offered to negotiate a loan for them, and failing therein, because of the precarious security, was finally compelled himself to lend the necessary money to complainants on said precarious, unusual and uncertain security and conditions. We contend that there was no fiduciary relation between the parties in this case.

*Nathan A. Means,* for appellees.—The findings of a master are entitled to the same consideration as a verdict of a jury and will not be set aside by the Supreme Court except for clear error, and this, though the testimony be conflicting and the merits may appear contrary to the master's conclusion: Brotherton Bros. v. Reynolds, 164 Pa. 134; Citizens Pass. Ry. Co. v. East Harrisburg Pass. Ry. Co., 164 Pa. 274; Warner v. Hare, 154 Pa. 548; Doran v. McConlogue, 150 Pa. 98; Stocker v. Hutter, 134 Pa. 19; Bugbee's App., 110 Pa. 331; Burton's App., 93 Pa. 214.

PER CURIAM, January 2, 1900:

An examination of the testimony in this case shows that the learned court below was entirely correct in its findings of fact, and upon those findings we affirm the decree.